IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IBRAHIM HALIL HERDEM,<br><br>　　　　　　　Petitioner,<br><br>　　vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; and JEROME KRAMER, Sheriff of Lincoln County Jail, Nebraska, custodian of detainees of the Lincoln County Jail In his official capacity,<br><br>　　　　　　　Respondents. | 7:26CV5001<br><br><br>**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |

In this action for habeas corpus relief pursuant to 28 U.S.C. § 2241, Petitioner Ibrahim Halil Herdem, an alien who is a citizen of Turkey, challenges his detention by Immigration and Customs Enforcement (ICE) without mandatory custody reviews required by 8 C.F.R. § 241.4, without responding to his inquires, and without providing evidence that removal to a third country is significantly likely in the reasonably foreseeable future contrary to *Zadvydas v. Davis*, 533 U.S. 678 (2001). Filing 1 at 2 (¶¶ 3–5). This case is now before the Court on Herdem's Petition for a Writ of Habeas Corpus. Filing 1.

The issues in this habeas proceeding are considerably different from those the undersigned has recently heard involving disputes over detention of undocumented aliens pursuant to either 8 U.S.C. § 1225 or 8 U.S.C. § 1226 after they were discovered in the United States. In this case, Petitioner Herdem seeks habeas corpus relief from his continued civil immigration detention following a final order of removal where the immigration judge (IJ) granted withholding of removal under INA § 241(b)(3), codified at 8 U.S.C. § 1231(b)(3). Filing 1 at 2 (¶ 1). Specifically,

1

Herdem contends that his prolonged detention violates the Due Process Clause of the Fifth Amendment and exceeds the statutory authority conferred by 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Filing 1 at 2 (¶ 6). As relief,

> Petitioner requests that this Court grant his Writ of Habeas Corpus and order his immediate release. In the alternative, Petitioner respectfully requests that this Court order Respondents to show cause why this Petition should not be granted within three days. *See* 28 U.S.C. § 2243.

Filing 1 at 3 (¶ 8).

For the reasons stated below, the Court now denies Herdem's Petition.

## I.  INTRODUCTION

### A.  Factual Background

Herdem is a citizen of Turkey "only," with no other citizenship or nationality. Filing 1 at 2 (¶ 3), 4 (¶¶ 13, 17). He entered the United States on or about November 2023. Filing 1 at 4 (¶ 18). Federal Respondents' declarant, Deportation Officer Seth Patrin, states that Herdem was not admitted or paroled into the United States by an Immigration Officer. Filing 7 at 3 (¶ 11). Herdem alleges that he was immediately taken into custody by Immigration and Customs Enforcement (ICE). Filing 1 at 4 (¶ 18). Officer Patrin states that on November 23, 2023, United States Border Patrol (USBP) served Herdem with a Form I-862 Notice to Appear charging him under INA § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. Filing 7 at 3 (¶ 12). According to Officer Patrin, that same day, Herdem was issued a Warrant of Arrest (I-200) and a Notice of Custody Determination (I-286), and he was subsequently released on an Order of Recognizance (I-220A). Filing 7 at 3 (¶ 13); *see also* Filing 1 at 4 (¶ 18) (alleging that Herdem was subsequently released). On July 18, 2024, Herdem applied for Asylum (Form I-589) with the Immigration Court. Filing 7 at 4 (¶ 14).

According to Officer Patrin, on January 31, 2025, Herdem was arrested and charged in North Dakota with Aggravated Domestic Violence, Felonious Restraint, Interfering with an Emergency Call, Suffocation, and Burglary. Filing 7 at 4 (¶ 15). On April 15, 2025, Herdem was arrested upon release from the Ward County Jail in North Dakota. Filing 7 at 4 (¶ 16). At the hearing before this Court, Herdem submitted the Register of Actions from the North Dakota case against him showing that all charges against him were dismissed on April 16, 2025. Filing 11-1.

Herdem alleges that on July 17, 2025, the Immigration Court issued a decision establishing that Herdem faced a probability of future persecution in Turkey. Filing 1 at 4 (¶ 19). The IJ's decision that Herdem cites in support of this assertion, Filing 1-1, states in part,

> The Court concludes that Respondent suffered harm amounting to persecution on account of a protected ground. The Court also finds government actors inflicted this persecution. Therefore, Respondent has established that he suffered past persecution in Turkey.

Filing 1-1 at 21. Nevertheless, the IJ denied Herdem's application for asylum under INA § 208, codified at 8 U.S.C. § 1158, ordered him removed from the United States to Turkey, but granted his application for withholding of removal under INA § 241(b)(3), codified at 8 U.S.C. § 1231(b)(3). Filing 1-1 at 3, 27. The IJ explained,

> Based on the totality of the record, the Court finds Respondent has not rebutted the presumption against asylum ineligibility under the "Lawful Pathways" regulations. Therefore, the Court denies Respondent's application for asylum under INA § 208[, 8 U.S.C. § 1158].

Filing 1-1 at 16. Although the IJ ordered Herdem removed from the United States to Turkey, the IJ granted Herdem's application for withholding of removal as follows:

> Considering the above evidence, the Court concludes the DHS has not met its burden to rebut the presumption that Respondent's life or freedom would be threatened in the future on the basis of the original claim. 8 C.F.R. § 1208.16(b)(1)(i). Accordingly, the Court will grant Respondent's application for withholding of removal under INA § 241(b)(3)[, 8 U.S.C. § 1231(b)(3)].

Filing 1-1 at 27; Filing 7 at 4 (¶ 17).

3

Herdem alleges that since the IJ's decision in July 2025, ICE has refused to release him, stating that they are "looking for another country" for removal, but no alternative country has been identified so far. Filing 1 at 4 (¶ 20). He alleges that for the past four months, ICE officials have attempted to coerce him into "voluntary" removal to third countries, including Costa Rica, Mexico, and Honduras, under threat that he will never be released if he does not comply. Filing 1 at 5 (¶ 21). He alleges that ICE has also been unresponsive to his inquiries regarding his custody status for at least six months. Filing 1 at 5 (¶ 22). Officer Patrin states that on October 21, 2025, ICE ERO SPM contacted ICE headquarters for updates regarding third country removal options, and the response indicated that ICE headquarters was actively pursuing third-country removal options at that time. Filing 7 at 4 (¶ 18).

Officer Patrin states that on December 4, 2026, Herdem was transferred to the Lincoln County Jail in Nebraska, where Herdem remains at this time. Filing 7 at 4 (¶¶ 19, 22). Officer Patrin states further that on January 22, 2026, ICE HQ served Herdem with a Decision to Continue Detention Letter. Filing 7 at 4 (¶ 20). The Decision stated that Herdem would not be released from custody at that time for the following reasons:

> This decision was based on a review of your file record, personal interview, and consideration of any information you submitted to ICE reviewing officials and upon review of the factors for consideration set forth at 8 C.F.R. § 241.4(e), (f), and (g).

Filing 7-1 at 1.[1] The Decision states further in pertinent part,

---

[1] The first two provisions of 8 C.F.R. § 241.4 mentioned in the ICE Detention state the following:

(e) Criteria for release. Before making any recommendation or decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that:

(1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;

(2) The detainee is presently a non-violent person;

(3) The detainee is likely to remain nonviolent if released;

(4) The detainee is not likely to pose a threat to the community following release;

ICE continues to seek a third country alternative for your removal from the United States. Therefore, you are to remain in ICE custody. In addition, ICE is unable to conclude that the factors set forth at 8 C.F.R. § 241.4(e) have been satisfied.

This decision, however, does not preclude you from bringing forth evidence in the future to demonstrate a good reason why your removal is unlikely.

Filing 7-1 at 1. Officer Patrin states that Herdem's next Post Order Custody Review is scheduled for April 22, 2026. Filing 7 at 4 (¶ 20).

---

(5) The detainee is not likely to violate the conditions of release; and

(6) The detainee does not pose a significant flight risk if released.

(f) Factors for consideration. The following factors should be weighed in considering whether to recommend further detention or release of a detainee:

(1) The nature and number of disciplinary infractions or incident reports received when incarcerated or while in Service custody;

(2) The detainee's criminal conduct and criminal convictions, including consideration of the nature and severity of the alien's convictions, sentences imposed and time actually served, probation and criminal parole history, evidence of recidivism, and other criminal history; (3) Any available psychiatric and psychological reports pertaining to the detainee's mental health;

(4) Evidence of rehabilitation including institutional progress relating to participation in work, educational, and vocational programs, where available;

(5) Favorable factors, including ties to the United States such as the number of close relatives residing here lawfully;

(6) Prior immigration violations and history;

(7) The likelihood that the alien is a significant flight risk or may abscond to avoid removal, including history of escapes, failures to appear for immigration or other proceedings, absence without leave from any halfway house or sponsorship program, and other defaults; and

(8) Any other information that is probative of whether the alien is likely to—

(i) Adjust to life in a community,

(ii) Engage in future acts of violence,

(iii) Engage in future criminal activity,

(iv) Pose a danger to the safety of himself or herself or to other persons or to property, or

(v) Violate the conditions of his or her release from immigration custody pending removal from the United States.

8 C.F.R. § 241.4(e)–(f). The third subsection of the regulation mentioned in the Decision, § 241.4(g), concerns the removal period, travel documents, and docket control for aliens continued in detention.

Officer Patrin reports that on January 22, 2026, ICE HQ again reported that they are actively working with the Department of State (DOS) and the Department of Homeland Security (DHS) to remove Herdem to a third country. Filing 7 at 4 (¶ 21).

### B.  Procedural Background

In his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, filed January 27, 2026, Herdem asserts four causes of action for relief. In Count I, he asserts violation of substantive due process under the Fifth Amendment, based on his allegation, "Because Petitioner's removal is not significantly likely in the reasonably foreseeable future, his continued detention is not reasonably related to a legitimate, non-punitive government interest." Filing 1 at 15 (¶ 68). In Count II, he asserts violation of 8 U.S.C. § 1231(a)(6) and "the *Zadvydas* limitation," based on the following allegations:

> 71.  Under *Zadvydas*, the government's authority to detain under § 1231(a)(6) is limited to the period "reasonably necessary" to effectuate removal.
>
> 72.  Petitioner's cumulative detention exceeds the six-month presumptively reasonable period.
>
> 73.  Because Respondents cannot demonstrate "legitimate progress" toward removal, the statutory authority for Petitioner's detention has expired.

Filing 1 at 15 (¶¶ 71–73). In Court III, he asserts violation of procedural due process under the Fifth Amendment based on his allegation, "Respondents have failed to provide Petitioner with a constitutionally adequate custody review and have further failed to provide notice and an opportunity to seek protection from third-country removal, violating the rule in *Gomez v. Mattos, 2025 WL 3101994*." Filing 1 at 16 (¶ 76). Finally, in Count IV, he asserts violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706, based on the following allegations:

> 78.  Respondents' failure to follow the mandatory custody review procedures set forth in 8 C.F.R. § 241.4 and § 241.13 is arbitrary, capricious, and an abuse of discretion.

6

79.     Respondents' failure to either remove Petitioner or release him constitutes "agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1).

80.     Respondents' policy of "surprise" third-country removal lacks reasoned decisionmaking and must be set aside under 5 U.S.C. § 706(2)(A).

Filing 1 at 16 (¶¶ 78–80).[2]

Herdem requests that the Court provide the following extensive relief:

1.      Assume jurisdiction over this matter;

2.      Grant the petition for a writ of habeas corpus;

3.      Issue an order directing Respondents to show cause within three (3) days why the Writ should not be granted, pursuant to 28 U.S.C. § 2243;

4.      Issue an order prohibiting Respondents from transferring Petitioner outside of this judicial district during the adjudication of this Petition without the fear-based protections required by law;

5.      Expedite consideration of this action pursuant to 28 U.S.C. § 1657 because it is an action brought under 28 U.S.C. § 153;

6.      Declare that Respondents' actions or omissions violate the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(6), the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

7.      Grant a writ of habeas corpus directing Respondents to immediately release Petitioner from their custody;

8.      Permanently enjoin Respondents from removing Petitioner to any third country without providing at least thirty (30) days' advance written notice and a meaningful opportunity to seek fear-based protection (Withholding of Removal or CAT) before an Immigration Judge, consistent with the requirements of Procedural Due Process;

---

[2] Herdem also alleges that he suffers from a cervical herniated disc and experiences ongoing and significant pay, but he has only received pain killers as treatment, and that his request for an extra pillow was denied. Filing 1 at 5 (¶ 24). In addition, he alleges that he suffers from a severe dental issue, but when ICE transported him to a dentist in August 2025, the dentist told him that ICE would not cover the necessary treatment, even though he required a root canal. Filing 1 at 5 (¶ 250). He alleges that when he again reported his dental condition and severe pain at his current detention facility, he was informed that no dentist was available, and he was given only pain killers. Filing 1 at 5 (¶ 26). At the hearing on his Petition, Herdem's counsel clarified that he understood a claim based on these circumstances would require another habeas petition under a different statute, so that he was not asking the Court to address that issue, only the issue of prolonged detention.

9.     Award Petitioner reasonable attorney's fees and costs of this action under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, and any other applicable law; and

10.    Grant such other and further relief as the Court deems just and proper.

Filing 1 at 16–17 (Prayer for Relief). Herdem did not file a brief in support of his Petition and instead made legal arguments in the Petition itself. Filing 1.

On February 2, 2026, before Herdem had filed proof of service on any Respondent, and even though he had not filed a Motion for an Order to Show Cause, the Court filed an Order to Show Cause pursuant to 28 U.S.C. § 2243. Filing 3. That Order set deadlines for Respondents to make a return certifying the true cause of Herdem's detention and why his Petition should not be granted not later than three business days after receipt of service of Herdem's Petition and the Order to Show Cause. Filing 3 at 3 (¶ 3). It also set a deadline for Herdem to file a reply. Filing 3 at 3 (¶ 4). The Order stated, "Upon the filing of Herdem's proof of service of the Petition and this Show Cause Order, the Court will promptly set a hearing on this matter." Filing 3 at 6 (¶ 5).

The Federal Respondents filed a Response to the Petition for Writ of Habeas Corpus on February 13, 2026, accompanied by an Index identifying pertinent evidence as the Declaration of Deportation Officer Patrin and the ICE Decision to Continue Detention Letter issued to Herdem on January 22, 2026, as well as the Declaration and the Decision to Continue Detention Letter themselves. Filing 5; Filing 6; Filing 7. In an Order filed February 17, 2026, the Court observed that there was no indication on the record of service of the Petition on the State Respondent, Jerome Kramer, Sheriff of Lincoln County Jail, the alleged physical custodian of Herdem. Filing 8 at 1. The Court stated that it would not set a hearing on the Petition in this matter until Herdem filed proof of service on the State Respondent. Filing 8 at 1. Therefore, the Court directed Herdem to serve his Petition and the Order to Show Cause on the State Respondent and to file proof of such service, at which time the Court would promptly set a hearing on Herdem's Petition. Filing 8 at 2.

8

On February 24, 2026, Herdem's counsel filed a Certificate of Service stating that the State Respondent was served by certified mail on February 20, 2026, and delivery was confirmed on February 23, 2026. Filing 9. Consequently, in an Order filed February 26, 2026, the Court set a hearing on Herdem's Petition for March 2, 2026, via Zoom videoconference, noting that the Court had limited time for the hearing because the Court was involved in a trial in another matter that day. Filing 10 at 1.

Herdem filed no reply, but he did file an exhibit showing dismissal of the North Dakota charges. Filing 11; Filing 11-1. As mentioned above, the Court held a hearing via Zoom on Herdem's Petition on March 2, 2026. Filing 12 (hearing minutes). No counsel for State Respondent ever filed an appearance in the case or a return in response to the Petition and the Order to Show Cause, nor did anyone appear for the State Respondent at the hearing. Consequently, only counsel for Herdem and Federal Respondents participated in the hearing. After some initial technological glitches, the hearing took place by videoconference on March 2, 2026. Filing 12 (hearing minutes).

Having considered the parties' written and oral submissions at the Court's earliest reasonable opportunity to give them due consideration, the Court now enters this order on Herdem's Petition.

## II.  LEGAL ANALYSIS

### A.  The Legal Context

Some legal context will be helpful to understanding the issues and arguments in this case. Section 2241 of Title 28 of the United States Code extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Petitioner Herdem. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend

9

that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))). The applicable procedures for disposition of a habeas corpus petition under 28 U.S.C. § 2241 are set out in 28 U.S.C. § 2243, which among other things requires a court to "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243.

The statute relevant to Herdem's detention is 8 U.S.C. § 1231, which "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (citing 8 U.S.C. § 1231(a)). Section 1231(a)(1) specifies the removal period, when the period begins, and under what circumstances the removal period may be suspended, as follows:

> (a) Detention, release, and removal of aliens ordered removed
>
> > (1) Removal period
> >
> > > (A) In general
> > >
> > > Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
> > >
> > > (B) Beginning of period
> > >
> > > The removal period begins on the latest of the following:
> > >
> > > > (i) The date the order of removal becomes administratively final.
> > > >
> > > > (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

10

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

> (C) Suspension of period

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(A)–(C).[3] Thus, as the Supreme Court has explained, "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Johnson*, 596 U.S. at 578 (citing 8 U.S.C. § 1231(a)(1)(A)); *Mumad v. Garland*, 11 F.4th 834, 837 (8th Cir. 2021) ("Under the Immigration and Nationality Act, Congress directs the Attorney General to remove an alien from the country within ninety days of a removal order." (citing 8 U.S.C. § 1231(a)(1)(A)).

The statute also provides "that the Government 'shall' detain noncitizens during the statutory removal period." *Johnson*, 596 U.S. at 578 (quoting 8 U.S.C. § 1231(a)(2)). Specifically, it states in the part relevant here,

> (2) Detention

> (A) In general

> During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2).

---

[3] 8 C.F.R. § 241.4(g) contains comparable provisions concerning the removal period and its suspension. *See* 8 C.F.R. § 241.4(g)(1)(i)–(ii).

Section 1231(a) also provides for supervision after the 90-day removal period expires, as follows:

> (3) Supervision after 90-day period
>
> If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—
>
> > (A) to appear before an immigration officer periodically for identification;
> >
> > (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
> >
> > (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
> >
> > (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

8 U.S.C. § 1231(a)(3).[4]

---

[4] Revocation of supervised release is permissible under 8 C.F.R. § 241.13(i), which states:

(i) Revocation of release—

(1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.

(2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

(3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(j).

Section 1231(a)(6) limits detention of aliens ordered removed beyond the removal period

as follows:

> (6) Inadmissible or criminal aliens
>
> An alien ordered removed who is inadmissible under section 1182 of this title,
> removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or
> who has been determined by the Attorney General to be a risk to the community or
> unlikely to comply with the order of removal, may be detained beyond the removal
> period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). Thus, as the Supreme Court explained,

> After the removal period expires, the Government "may" detain only four
> categories of people: (1) those who are "inadmissible" on certain specified grounds;
> (2) those who are "removable" on certain specified grounds; (3) those it determines
> "to be a risk to the community"; and (4) those it determines to be "unlikely to
> comply with the order of removal." § 1231(a)(6). Individuals released after the
> removal period remain subject to terms of supervision. *Ibid*.

*Johnson*, 596 U.S. at 578–79.[5]

Perhaps more importantly in this case, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the

Supreme Court concluded that as to aliens who were admitted to the United States but subsequently

ordered removed, "indefinite detention . . . would raise serious constitutional concerns," so the

Supreme Court "construe[d] the statute [*i.e.*, 8 U.S.C. § 1231(a)(6)] to contain an implicit

'reasonable time' limitation, the application of which is subject to federal-court review." *Zadvydas,*

533 U.S. at 682. Although *Zadvydas* expressly stated that it did not apply to aliens who were not

admitted to the United States, such as Herdem, the parties have assumed the holding in *Zadvydas*

setting out a reasonable time limitation on detention applies to such aliens. *But see Nma v. Ridge,*

286 F. Supp. 2d 469, 473 (E.D. Pa. 2003) ("[I]f the Zadvydas case is not applicable to aliens who

are not "admitted" into the United States, assuming Nma is an inadmissable alien, then the

constitutionality of Nma's continued indefinite detention is controlled by the Third Circuit's pre-

---

[5] The parties assert that various provisions of 8 C.F.R. § 241.4, concerning continued detention of certain aliens beyond the removal period, are also pertinent in this case. The Court will address any such provisions, including ones already set out in footnotes, as they become relevant to analysis of the parties' arguments.

*Zadvydas* opinion in *Ngo v. INS,* 192 F.3d 390 (3rd Cir .1999). The Third Circuit's decision in *Ngo* essentially allows for the indefinite detention of an alien that is not presently removable unless there is no possibility of removal. *Id.* at 397.").

In *Zadvydas*, the Supreme Court recognized a six-month constitutional period of detention. *Id.* at 701. The Supreme Court explained,

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701. However, the Supreme Court cautioned that a standard that required an alien seeking release "to show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable" would "demand[ ] more than [the Court's] reading of the statute can bear." *Id.* at 702 (emphasis in the original).

Section 1231(b) identifies countries to which aliens may be removed. 8 U.S.C. § 1231(b). The part of the statute that is relevant here is § 1231(b)(2), which applies to "[o]ther aliens" such as Herdem—that is, aliens other than the ones defined in § 1231(b)(1) who are "[a]liens arriving at the United States." 8 U.S.C. § 1231(b)(1). In the part pertinent here, § 1231(b)(2) requires a country willing to accept the alien from a list of alternatives in order to effect removal.[6] To put it

---

[6] Section 1231(b)(2) provides:

(2) Other aliens

Subject to paragraph (3)--

    (A) Selection of country by alien

    Except as otherwise provided in this paragraph--

14

(i) any alien not described in paragraph (1) who has been ordered removed may designate one country to which the alien wants to be removed, and

(ii) the Attorney General shall remove the alien to the country the alien so designates.

(B) Limitation on designation

An alien may designate under subparagraph (A)(i) a foreign territory contiguous to the United States, an adjacent island, or an island adjacent to a foreign territory contiguous to the United States as the place to which the alien is to be removed only if the alien is a native, citizen, subject, or national of, or has resided in, that designated territory or island.

(C) Disregarding designation

The Attorney General may disregard a designation under subparagraph (A)(i) if--

(i) the alien fails to designate a country promptly;

(ii) the government of the country does not inform the Attorney General finally, within 30 days after the date the Attorney General first inquires, whether the government will accept the alien into the country;

(iii) the government of the country is not willing to accept the alien into the country; or

(iv) the Attorney General decides that removing the alien to the country is prejudicial to the United States.

(D) Alternative country

If an alien is not removed to a country designated under subparagraph (A)(i), the Attorney General shall remove the alien to a country of which the alien is a subject, national, or citizen unless the government of the country--

(i) does not inform the Attorney General or the alien finally, within 30 days after the date the Attorney General first inquires or within another period of time the Attorney General decides is reasonable, whether the government will accept the alien into the country; or

(ii) is not willing to accept the alien into the country.

(E) Additional removal countries

If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:

(i) The country from which the alien was admitted to the United States.

(ii) The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.

(iii) A country in which the alien resided before the alien entered the country from which the alien entered the United States.

briefly, this provision "provides numerous options [for the country to which an alien may be removed]: a country designated by the alien; the alien's country of citizenship; the alien's previous country of residence; the alien's country of birth; the country from which the alien departed for the United States; and finally, any country willing to accept the alien." *Johnson v. Guzman Chavez,* 594 U.S. 523, 536 (2021) (citing Brief for Petitioners 3, in turn citing 8 U. S. C. § 1231(b)(2)).

Herdem specifically relies on § 1231(b)(3), which imposes "Restrictions on removal to a country where [an] alien's life or freedom would be threatened." 8 U.S.C. § 1231(b)(3). It states,

> (3) Restriction on removal to a country where alien's life or freedom would be threatened
>
>> (A) In general
>>
>> Notwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1231(b)(3)(A). Although § 1231(b)(3)(B) provides exceptions for aliens deportable under § 1227(a)(4)(D), Herdem does not fall within those exceptions because he was ordered removed under 8 U.S.C. § 1182 (a)(6)(A)(i), not § 1227(a)(4)(D). Section 1231(b)(3)(C) provides,

> (C) Sustaining burden of proof; credibility determinations
>
> In determining whether an alien has demonstrated that the alien's life or freedom would be threatened for a reason described in subparagraph (A), the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and

---

(iv) The country in which the alien was born.

(v) The country that had sovereignty over the alien's birthplace when the alien was born.

(vi) The country in which the alien's birthplace is located when the alien is ordered removed.

(vii) If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

8 U.S.C. § 1231(b)(2)(A)–(E).

shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 1158(b)(1)(B) of this title.

8 U.S.C. § 1231(b)(3)(C). The immigration court has already concluded that Herdem made such a showing and withheld removal to Turkey.

### B.  Counts I and II: Foreseeability of Removal

Herdem first argues that there is no reasonable foreseeability of his removal, so that his continued detention violates the Fifth Amendment's substantive due process protections and *Zadvydas*, as alleged in Counts I and Count II, respectively. The Court begins its analysis of these continued detention claims with a summary of the parties' arguments.

### 1.  The Parties' Arguments

Herdem filed no brief in support of his Petition, instead including his arguments in the Petition itself. He argues that the government's "good faith efforts" to remove an individual are not sufficient to meet the *Zadvydas* or Fifth Amendment standard. Filing 1 at 8 (¶ 35) (citing *Zadvydas*, 533 U.S. at 702). He also argues that once the burden shifts to the government to rebut an alien's showing that there is no significant likelihood of removal in the reasonably foreseeable future, an "unsubstantiated belief" that "ICE can request a travel document and effectuate [a petitioner's] removal from the United States to that country" is insufficient to meet the government's burden. Filing 1 at 8–9 (quoting *McKenzie v. Gillis*, Civil Action No. 5:19-cv-139-KS-MTP, 2020 WL 5536510, at *2-*3 (S.D. Miss. July 30, 2020), *report and recommendation adopted as modified by McKenzie v. Gillis*, Civil Action No. 5:19-cv-139-KS-MTP, 2020 WL 5535367 (S.D. Miss., Sep. 15, 2020)). Instead, he argues that the government must demonstrate "legitimate progress," Filing 1 at 9 (quoting *Ahrach v. Baltazar*, 2025 WL 3227529, at *4 (D. Colo. Nov. 19, 2025), and "concrete steps." Filing 1 at 9 (citing *Aguilar v. Noem*, 2025 WL 3514282, at *5 (D. Colo. Dec. 8, 2025)). He also contends that bare assertions that ICE is "pursuing third country removal options" are legally insufficient to rebut a Petitioner's showing. Filing 1 at

17

9 (quoting *Aguilar*, 2025 WL 3514282, at *4). Herdem argues that in this case, the absence of an identified country, the lack of travel documents, and the absence of any diplomatic agreement render removal a "remote possibility" rather than a significant likelihood. Filing 1 at 10. Next, Herdem argues that the withholding of removal based on the threat to his life or freedom weighs heavily in the *Zadvydas* foreseeability analysis, where he cannot be removed to his country of citizenship and DHS has not identified a third country willing to accept him. Filing 1 at 11.

Federal Respondents argue that Herdem's detention is justified even after the presumptively constitutional detention period set out in *Zadvyadas* expires "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Filing 4 at 6 (quoting *Zadvydas*, 533 U.S. at 701). Here, Federal Respondents argue that there is a significant possibility of removal where on October 21, 2025, ICE Headquarters responded to an ICE inquiry that it was focusing on finding a suitable third country for Herdem's removal. Filing 5 at 7 (citing Filing 7 at 4 (¶ 18). They also argue that on January 22, 2026, ICE Headquarters again reported that it was actively working with the DOS and the DHS on avenues to remove Herdem to a third country. Filing 5 at 7 (again citing Filing 7 at 4 (¶ 18)). Federal Respondents argue further that ICE has served Herdem with a Decision to Continue Detention Letter informing him *inter alia* of the agency's focus on removing him to a third country. Filing 5 at 7 (citing Filing 7 at 4 (¶ 20)). Thus, Federal Respondents argue that Herdem's detention has only very recently exceeded the presumptively constitutional six-month period and that ICE "merely asks this Court to not find the detention currently unlawful, allowing the agency a meaningful opportunity to effectuate Petitioner's third country removal." Filing 5 at 7.

   2.  *The* Zadvydas *Presumption of Unlawful Detention Does Not Yet Apply*

The Federal Respondents conceded in this case that the six-month period of presumptively constitutional detention just recently expired. Apparently for that reason, both sides focused their

arguments on whether or not the Federal Respondents could overcome the *Zadvydas* presumption that Herdem's detention was no longer constitutional. Indeed, Herdem argues in his Petition that despite the grant of withholding of removal by an IJ on July 17, 2025, after a finding that Herdem faced a high probability that he would face persecution in Turkey, ICE has held Herdem "in prolonged, arbitrary detention" and "has provided no evidence that removal to a third country is 'significantly likely in the reasonably foreseeable future' under *Zadvydas v. Davis*, 533 U.S. 678 (2001)." Filing 1 at 2 (¶¶ 4–5). However, Herdem cites no authority that there is a presumption of unconstitutional detention merely because detention has run longer than six months.

In *Zadvydas*, the Supreme Court made clear when the government is required to rebut a presumption of unconstitutional detention: "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701; *see also Castaneda v. Perry*, 95 F.4th 750, 756 (4th Cir. 2024). ("So the question before us is whether Vasquez Castaneda has provided 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future' [and] "[i]f he has, then the burden shifts to the Government to rebut that showing. If he hasn't, then his claim fails and we proceed no further."). The Court finds that Herdem has not met his initial burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," so arguments about whether Federal Respondents have overcome the *Zadvydas* presumption are premature *Id.*

Herdem has shown that his removal to Turkey would threaten his life or freedom. Filing 1-1 at 27; Filing 7 at 4 (¶ 17). However, because the IJ withheld his removal to Turkey, Turkey was never properly a country to which Herdem could reasonably or foreseeably be removed. Herdem has made no showing at all that there is no significant likelihood of removal to a third

country in the reasonably foreseeable future. Herdem simply asks the Court to presume that he has met his initial burden—if he does not overlook his initial burden entirely—because no removal to a third country has occurred so far. The Court finds such a presumption unwarranted. *See Perez v. Berg*, No. 24-CV-3251 (PAM/SGE), 2025 WL 566884, at \*5 (D. Minn. Jan. 6, 2025) (stating, "Mr. Perez has provided no evidence in the record other than the passage of time to demonstrate that he is not likely to be removed in the foreseeable future," so his claim was denied).

In *Zadvydas*, the Supreme Court rejected the Ninth Circuit's conclusion in one of the cases below that the "absence" of an "extant or pending" repatriation agreement warranted release of the petitioner because the Ninth Circuit failed to give "due weight to the likelihood of successful future negotiations." 533 U.S. at 702. Although that statement was in the context of the test for the government to rebut the *Zadvydas* presumption of unconstitutional detention, it also signals that "the likelihood of successful future negotiations" cannot be ignored when considering whether an alien has met his or her initial burden. Here, Herdem argues that the absence of travel documents and the absence of any diplomatic agreement render removal a "remote possibility" rather than a significant likelihood. Filing 1 at 10. That is not enough to meet his burden because it does not consider "the likelihood of successful future negotiations." *Cf. Zadvydas*, 533 U.S. at 702.

Moreover, Herdem has not shown in these proceedings that he ever selected or designated a third country for removal pursuant to 8 U.S.C. § 1231(b)(2)(A), which might have focused Federal Respondents' efforts to remove him on a specific third country. Thus, Federal Respondents must consider all possible "[a]dditional removal countries" under § 1231(b)(2)(E), and there is no reasonable basis to conclude that removal to any of those "[a]dditional removal countries" is not reasonably foreseeable.

Herdem is not entitled to relief on his first two claims on this ground alone. *See Castenada*, 95 F.4th at 760 n.9 ("Given our conclusion that Vasquez Castaneda has not made the requisite

showing for relief under *Zadvydas*, we do not address the district court's alternative finding that the Government provided sufficient evidence to rebut that showing.").

### 3. Even If Herdem Had Met His Initial Burden, Federal Respondents Have Rebutted the Zadvydas Presumption of Unconstitutional Detention

Assuming for the sake of argument that Herdem met his initial burden, the Court turns to the second step in analysis of the *Zadvydas* presumption—the one on which the parties focused. On this step, the Court finds that Federal Respondents have "respond[ed] with evidence sufficient to rebut [the alien's] showing." *Zadvydas*, 533 U.S. at 701.

The Court acknowledges that "for the detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as 'reasonably foreseeable future' conversely would shrink." *Zadvydas*, 533 U.S. at 701. However, in this case, the presumptively reasonable period of detention has only just recently expired, so Federal Respondents' leeway to show removal is likely in the "reasonably foreseeable future" is at or near its maximum.

In *Zadvydas*, the Supreme Court rejected the Ninth Circuit's conclusion in one of the cases below that the "absence" of an "extant or pending" repatriation agreement warranted release of the petitioner because the Ninth Circuit failed to give "due weight to the likelihood of successful future negotiations." 533 U.S. at 702. Thus, the Court rejects Herdem's assertions that Federal Respondents could only rebut the presumption if they produced evidence of an identified country for removal, travel documents, and a diplomatic agreement in order to render removal more than a "remote possibility." Filing 1 at 10.

The Eighth Circuit has not commented on the application of the "*Zadvydas* presumption," or more specifically, what the government must present to rebut that presumption, amid the recent spate of alien habeas corpus petitions challenging their detentions. It appears that neither has any other Circuit Court of Appeals. However, more than a decade ago, the Eighth Circuit concluded that detention was lawful where ICE was attempting to obtain travel documents from the

21

government of the alien's country of citizenship and that it was not until the district court determined that prompt removal was unlikely despite these efforts that the alien's detention ceased to be substantially justified. *See Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008). Here, the Court credits Federal Respondents' statements that ICE headquarters is actively attempting to obtain the agreement of a suitable third country for Herdem's removal. *See* Filing 5 at 7 (citing Filing 7 at 4 (¶ 18) (ICE HQ response on October 21, 2025); Filing 5 at 7 (ICE HQ response on January 22, 2026); Filing 5 at 7 (citing Filing 7 at 4 (¶ 20)) (ICE Decisions to Continue Detention Letter on January 22, 2026).

A district court in this Circuit provided a useful summary of circumstances showing that removal is not likely in the reasonably foreseeable future:

> Courts have found no significant likelihood of removal in five types of cases: (1) where the detainee is stateless and no country will accept [her]; (2) where the detainee's country of origin refuses to issue a travel document; (3) where there is no repatriation agreement between the detainee's native country and the United States; (4) where political conditions in the country of origin render removal virtually impossible; and (5) where a foreign country's delay in issuing travel documents is so extraordinarily long that the delay itself warrants an inference that the documents will likely never issue.

*Deqa M. Y. v. Barr*, No. 20-CV-1091 (ECT/DTS), 2020 WL 4926618, at *2 (D. Minn. Aug. 21, 2020) (quoting *Ahmed v. Brott*, No. 14-cv-5000 (DSD/BRT), 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015) (collecting cases), *report and recommendation adopted*, 2015 WL 1542155 (D. Minn. Apr. 7, 2015)). "In other words," that court explained, "for there to be no significant likelihood of removal in the foreseeable future, there must be some indication that the government is either unwilling or, due to seemingly insurmountable barriers, incapable executing an alien's removal." *Id*. (again quoting *Ahmed*, 2015 WL 1542131, at *4).

The record here does not show either that Federal Respondents are unwilling to attempt to obtain third country agreement to accept Herdem or that Federal Respondents face unsurmountable barriers in attempting to obtain such agreement. *Id*. Again, it is true that Herdem cannot be

22

repatriated to his native country of Turkey because his removal there has been withhold, even if Turkey was willing to issue travel documents. This conclusion eliminates from consideration the second, third, and fourth circumstances listed in *Deqa*. On the other hand, there is no evidence that no country will accept Herdem or that any foreign country has delayed issuing travel documents for an extraordinarily long time. *Id.*

Thus, the Court concludes that—at least at this point—Federal Respondents have rebutted the presumption that Herdem's detention has been unconstitutionally long, if such a presumption would be appropriate in the circumstances of this case. Thus, the Court denies relief on Herdem's first and second claims alleging violations of the Fifth Amendment's substantive due process protections and *Zadvydas* on this additional ground.

### C. Counts III and IV: Failure to Follow Custody Review Procedures

In Court III, Herdem asserts violation of procedural due process under the Fifth Amendment. Filing 1 at 16. This claim is based on his allegation, "Respondents have failed to provide Petitioner with a constitutionally adequate custody review and have further failed to provide notice and an opportunity to seek protection from third-country removal, violating the rule in *Gomez v. Mattos*, 2025 WL 3101994." Filing 1 at 16 (¶ 76). In Count IV, Herdem asserts violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706, based first on the allegation, "Respondents' failure to follow the mandatory custody review procedures set forth in 8 C.F.R. § 241.4 and § 241.13 is arbitrary, capricious, and an abuse of discretion." Filing 1 at 16 (¶ 78). The Court begins its analysis of these claims with a summary of the parties' arguments concerning the alleged violation of custody review procedures.

#### 1. The Parties' Arguments

Herdem argues that despite the grant of withholding of removal to Turkey, ICE has failed to conduct the mandatory reviews required by 8 C.F.R. § 241.4. Filing 1 at 2 (¶ 5). He contends

that pursuant to 8 C.F.R. §§ 241.4(c)(1), and (k)(1)(i), by the end of the 90-day initial removal period, the local ICE field office with jurisdiction over the alien's detention must conduct a custody review to determine whether the alien should remain detained. Filing 5 at 7 (¶¶ 33). He also asserts that 8 C.F.R. § 241.4(i)(7) was added to the regulation to include a supplemental review procedure that ICE HQ must initiate when the alien submits, or the record contains, information providing a substantial reason to believe that removal of the alien is not significantly likely in the reasonably foreseeable future. Filing 1 at 8 (¶ 34); *see also* Filing 1 at 13 (¶ 57). He argues further that 8 C.F.R. § 241.13 creates a mandatory "special review procedure" for cases where removal is not significantly likely. Filing 1 at 13 (¶ 58). Herdem argues,

> In Petitioner's case, Respondents have failed to provide a meaningful custody review that accounts for the legal barrier created by the grant of Withholding of Removal. By failing to perform these reviews, or by performing "pro forma" reviews that ignore the institutional barriers to Petitioner's removal, Respondents have violated their own regulations, rendering Petitioner's continued detention per se unlawful under the APA and the Due Process Clause.

Filing 1 at 13 (¶ 59).

Federal Respondents state that on October 21, 2025, ICE ERO SPM contacted ICE HQ for updates regarding third country removal options and ICE HQ indicated that it was actively pursuing third country removal options at that time. Filing 5 at 2. Federal Respondents point out that on January 22, 2026, ICE HQ served Herdem a Decision to Continue Detention Letter. Filing 5 at 2. Federal Respondents offer no specific argument that either of these events met the requirements of the regulations on which Herdem relies, nor do the Federal Respondents otherwise address the claims of violation of custody review regulations. Filing 5 *passim*.

### 2. Any Violation of Custody Review Regulations or Due Process Has Been Remedied

The Court concludes first that Herdem has not shown that he met the initial requirement for the "special" review under 8 C.F.R. § 241.13. That regulation states in part,

24

> (a) Scope. This section establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.

8 C.F.R. § 241.13(a). For the reasons stated above in § II.B.2., Herdem has not "provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." *Id*. Thus, he has not triggered the "special review" provided by § 241.13(a).

The Court concludes further that even if there is a violation of the regulations concerning custody review of an alien detained after a determination that he or she should be removed, the appropriate remedy would not be release from custody. Rather, the remedy would be to require that the Federal Respondents promptly perform the required custody review. In this case, such a custody review has occurred—perhaps belatedly—on January 22, 2026. *See* Filing 7-1. Officer Patrin states that Herdem's next Post Order Custody Review is scheduled for April 22, 2026. Filing 7 at 4 (¶ 20). Under the circumstances, the Court finds that any harm from failure to conduct a custody review pursuant to the regulations earlier has been eliminated by a subsequent custody review and the scheduling of the next custody review.

Herdem asserts that he has a "due process right to receive meaningful notice and opportunity to present a fear-based claim . . . before DHS deports him to a third country." Filing 1 at 12 (¶ 53) (quoting *Gomez*, 2025 WL 3101994, at *6). Accepting for the sake of argument that due process requires such a hearing, this claim is speculative and premature. Herdem has not been notified of deportation to a specific third country, so the time for him to make a fear-based claim not to be deported to that specific country has not yet been triggered. Even if *Gomez* were controlling on this Court and could be read to provide a due process right to make a fear-based claim not to be deported to any third countries, Herdem has not asserted that he has a fear-based

claim not to be deported to any third countries, only a fear-based claim not to be deported to Turkey. An IJ has already withheld Herdem's removal to Turkey under INA § 241(b)(3), codified at 8 U.S.C. § 1231(b)(3), after a full hearing. Filing 1-1 at 3, 27.

Therefore, Herdem is not entitled to relief on his third cause of action asserting a procedural due process violation or the part of his fourth cause of action premised on failure to comply with the regulations concerning custody review.

### D.  Count IV: Remaining Procedural Due Process Claims

Herdem's fourth cause of action has two further prongs alleging the following:

> 79.    Respondents' failure to either remove Petitioner or release him constitutes "agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1).
>
> 80.    Respondents' policy of "surprise" third-country removal lacks reasoned decisionmaking and must be set aside under 5 U.S.C. § 706(2)(A).

Filing 1 at 16 (¶¶ 78–80).

Again, for the same reasons that there was no substantive due process violation or INA violation as asserted in Herdem's first and second causes of action, there is no basis on this record to hold that Federal Respondents' failure to remove or release Herdem was "agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1). Rather, Federal Respondents have made a showing that Herdem's removal to a third country is likely within the reasonably foreseeable future.

The last part of Herdem's fourth cause of action does not warrant relief because it is wholly unsupported by the record. Herdem has not offered any evidence that Federal Respondents have a "policy" of "surprise" third-country removals. He also has not offered any evidence that he has been subjected to any attempted "surprise" removal. This part of the fourth cause of action fails to state a claim upon which relief can be granted because it is based entirely on speculation. *See, e.g.,* *Watkins v. City of St. Louis, Missouri,* 102 F.4th 947, 951 (8th Cir. 2024) (to state a claim, "the

facts alleged 'must be enough to raise a right to relief above the speculative level.'" (quoting

*Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017), in turn quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)).

For these reasons, Herdem is not entitled to habeas corpus relief based on the remaining

prongs of his fourth cause of action.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Petitioner Ibrahim Halil Herdem's Petition for a Writ of Habeas

Corpus, Filing 1, is denied in its entirety.

Dated this 20th day of March, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge

27